# Donnelly *v.* Donnelly, Appellant.

*Judgment—Rule to open judgment—Consideration—Fraud—Collusion—Widow's statutory rights—Unenforceable claim—Burden of proof.*

1. Upon a rule filed by the widow of a decedent to open a confessed judgment entered in favor of a son of the widow and decedent, on the ground of want of consideration and that it had been entered with collusive intent of the parties to defraud her of her statutory rights in ·her husband's estate, the court did not err in dismissing the rule where it appeared that the son had assumed the management of his father's business nine years before the latter's death, and from that time had continuously had charge of the business under the promise that the father was to pay him eventually if able, but that the son was to run the risk; that the son devoted his whole time to the business; and that the judgment note for $8,000 was given ·by the decedent a short time before his death, when he failed in health and was about to go out of business.

2. In such case the burden of proof is upon the widow, and is not met by showing either that the son's management proved unprofitable, or that under the terms of his appointment he had no claim against the father which could have been enforced at law.

Argued Feb. 23, 1914. Appeal, No. 149, Jan. T., 1913, by Mary Donnelly, widow of Patrick Donnelly, deceased, from judgment of C. P. Lackawanna Co., May T., 1909, No. 182, discharging rule to open judgment in case of ·Owen Donnelly *v.* Patrick Donnelly. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Rule to open judgment. NEWCOMB, J., filed the following·opinion:

Judgment D. S. B. was entered against defendant March 27, 1909, on confession in his promissory note under seal dated March 26, same year, for upwards of $8,000.00, payable to the plaintiff, who was his son. Defendant was then an old man and did not long survive, his death occurring on the 1st of May following. The

present motion is not at the instance of his representatives—either real or personal—nor of any creditor; but at that of his widow who attacks the note as purely voluntary, and made with the collusive intent of the parties to defraud her out of her statutory rights in her husband's estate. That this is the ground alleged for relief is to be gathered only from the arguments of counsel, the files having become lost during the lapse of upwards of three years since the rule to show cause was taken. However, there is no difficulty on that score as counsel are not in dispute about the pleadings. The trouble is with the proofs which have been taken from time to time during the interval, though but recently filed at the time of the argument. Much of the evidence is either immaterial or irrelevant. At best it fails to support either of the essential averments, to wit, (1) want of consideration; (2) intent to defraud.

It is believed that both are essential to petitioner's case, as she is not in the position of a creditor who may avail himself of the constructive fraud imputed to a voluntary obligation entered into by his debtor. She stands only on her interest in the husband's estate which was wholly prospective and contingent at the date of the note. But, regardless of that distinction, the uncontradicted evidence shows the note to have been founded on a valid consideration originating some nine years earlier. It thus appears that in the spring of 1900, defendant was about making a visit to the old country and at his request this son took over the active management of his property and business which arrangement was thereafter continued until April 1, 1909, in the endeavor to pay off a considerable debt in which the father had become involved. The request was coupled with his promise to pay the son eventually if he should be able; but of that the son was to run the risk. The father was then engaged in the wholesale liquor business, but two years later he gave that up and engaged in the business at retail. No doubt during these nine years the relation of the parties

was highly confidential. Short of disposing of or encumbering the real estate—of which there were several parcels—the son seems to have had the utmost latitude of authority. It is freely admitted that he had his own support, and, during the last year—being then married—that of his wife, out of the income; that from the same source he made some small investments in his own name; but that he failed to make the business profitable enough to reduce the debts which, on the contrary, increased somewhat. The increase, however, was in part made up of municipal liens for intervening improvements; and the balance is probably due to several purchases of real estate which were made by the father during the time.

But, what is more to the present purpose, it is equally free from dispute that the son was attentive and gave his time and labor wholly to the undertaking, apparently to the father's satisfaction. It is not claimed that the investments in his own name were made in bad faith or with intent to wrongfully convert the father's property. Neither does it appear that he is now asserting title to the proceeds thereof as against the father's estate. So, if it were relevant to the petitioner's allegation, one could discover nothing in his relation of trust to make it improper for the son to accept such payment for his services as the father might feel disposed to make.

Probably the latter was then in failing health and it is not unlikely that what he did was in anticipation of approaching death. Admittedly he was going out of business and about to give up all connection with it, thus terminating the son's agency. This, on the face of the uncontradicted evidence, was the occasion of giving the note, and it was so given at the father's instance to secure what the latter thought proper to allow the son for the nine years' service. Of that, under the terms of the agency, the father was the judge.

While this was the plaintiff's testimony, it was not put in on his part; but by way of his cross-examination as a witness for petitioner. The transcript shows a vague

and indefinite offer of "the testimony taken before the president judge of the Orphans' Court of Lackawanna County on Thursday, Sept. 16, 1909." What testimony that may have been, and in what proceeding it may be found, does not appear. The offer was formally objected to, but in the absence of objection, it would avail nothing. What counsel had in mind may have been relevant but there is no way of ascertaining what it was. Possibly the offer. is not pressed and was intended to be withdrawn. Mention of it is made only to guard against any misunderstanding as to what is now referred to as the uncontradicted evidence.

As between the old gentleman and his wife, the later years of his life had been years of discord reaching back beyond the date of the note, viz: to a time when the wife was engaged in a separate business. This had collapsed about 1899. The son who was then about twenty-two years of age had adhered to the father in the family differences. About a year before giving the note the father had made his will, of which the son was the principal beneficiary. It doesn't appear, however, that the latter knew the provisions of the will; and whether so or not, in view of the liabilities, the value of that preferment was uncertain and somewhat doubtful.

In the mind of petitioner the course of events might have been well calculated to impeach the note. But on the evidence which she submits, the circumstances relied upon amount only to those of suspicion. She says the avowed consideration is merely colorable. At the present stage some weight would attach to that contention if she were seeking to set it aside as a fraud on her husband; for example, as a note procured by the son by taking advantage .of his father's confidence, thus casting upon the plaintiff the burden of strict proof. But what she alleges is a very different thing, viz: a common purpose of father and son to create a debt to the prejudice of a third party.

Thus, in the nature of her claim she assumes the bur-

den of proof, and that is not met by showing either that the son's management proved unprofitable, or that under the terms of his appointment he had no claim against the father which could have been enforced at law. It is believed that on the present showing there would be nothing to go to a jury if an issue were granted, and for that reason the rule to show cause is discharged.

The court discharged the rule.

Mary Donnelly appealed.

*Error assigned,* among others, was in discharging the rule to open judgment.

*R. H. Holgate,* with him *A. A. Vosburg,* and *M. A. McGinley,* for appellant.

*John P. Kelly,* of *O'Brien & Kelly,* for appellee.

PER CURIAM, March 23, 1914:

The judgment is affirmed on the opinion of Judge NEWCOMB.